**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| COINME INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-10972 |
| | ) | |
| v. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| ZERO HASH LLC, | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ZERO HASH LLC'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

## **PRELIMINARY STATEMENT**

Coinme Inc. ("Coinme") and Zero Hash LLC ("Zero Hash") are competitors who have both developed cryptocurrency trading platforms. (Dkt. 1 ¶¶ 2, 3, 68.) Recently, Zero Hash has won business from two Coinme customers—Coinstar Asset Holdings, LLC ("Coinstar") and MoneyGram Payment Systems, Inc. ("MoneyGram"). (Dkt. 1 ¶¶ 93, 141.) Apparently, having lost business from these customers, Coinme's finances are flagging, and its business is at risk. (Dkt. 1 ¶ 15.)[1] "Left with no alternatives" (Dkt. 1 ¶ 16), Coinme has filed the instant baseless lawsuit.

The Complaint appears designed to leave the impression that Zero Hash used Coinme's proprietary trading platform software or API to win business from Coinme's customers. But the Complaint studiously avoids making such an allegation; Coinme knows that it cannot do so in good faith. To the contrary, it is abundantly clear under the two contracts that Coinme attached to the Complaint as governing Coinme and Zero Hash's relationship that Zero Hash *never* had access to Coinme's proprietary trading platform software or API. (*See* Dkt. 1-1; Dkt. 1-2.) Unable to allege trade secret theft and given that the parties do not have an agreement with a non-competition clause, Coinme's Complaint is an attempt to manufacture one with creative pleading. Each count in the Complaint fails under applicable pleading standards.

*First*, Count I alleges that Zero Hash breached the Authorized Delegate Agreement ("ADA"), an agreement between the parties that allowed Coinme to use Zero Hash's license to operate in states in which Coinme was unlicensed. But Coinme does not contend that Zero Hash breached any substantive provision of that contract. Instead, it seeks to recast the ADA's Confidentiality provision into a broad non-compete, and asserts that Zero Hash breached it by

---

[1] Indeed, the State of Connecticut recently withdrew Coinme's license for failing to maintain a net worth of $1 million. *In the Matter of: Coinme Inc.*, NMLS #1185542, Order of Summary Suspension, Temporary Order to Cease and Desist, Oct. 25, 2024, available at coinme-connecticut-nov-4-oct-25.pdf (last visited December 19, 2024).

1

contracting with Coinstar, a Coinme customer. However, nothing in the ADA precluded Zero Hash from working with Coinstar, and the Complaint does not allege *facts* plausibly establishing that Zero Hash *used* particular *Confidential Information* belonging to Coinme when Zero Hash entered into a relationship with Coinstar. Count I must be dismissed.

*Second*, in Counts II and III, Coinme contends that Zero Hash's contracts with Coinstar and MoneyGram breached the Zero Hash LLC Platform Operator Agreement ("POA"), a second contract that the parties executed in connection with the ADA to address the terms on which Coinme would be granted access Zero Hash's trading platform. (*See* Dkt. 1-2.) But the POA itself does not contain a non-compete. So Coinme asserts that Zero Hash breached the terms of a purported amendment—the "Second Amendment to Zero Hash LLC Platform Operator Agreement" (the "Second Amendment") (Dkt. 1-3). However, Coinme has pled itself out of Court on Counts II and III. The POA expressly limits liability for a breach to the fees charged "during the 12 months immediately preceding the claim." Coinme admits that its business relationship with Zero Hash terminated more than one year prior to filing suit, meaning that no fees were charged in the twelve months preceding the claims asserted in this case. As such, no damages can lie, mandating dismissal. Additionally, it is apparent from the face of the Second Amendment that Zero Hash received no consideration for it, rendering it unenforceable. There is no cause of action for breach of an unenforceable contract.

*Third*, in a transparent attempt at evading the POA's contractual limitation of liability, Coinme recasts Count III's alleged breach of contract into a tort, claiming that, by contracting with MoneyGram, Zero Hash tortiously interfered with its contract with MoneyGram (Count IV) and expectation of additional business with MoneyGram (Count V). But neither of these counts allege facts plausibly establishing that Zero Hash's conduct was "improper" or "unjustified." Without

alleging this essential element, Coinme has merely alleged that it lost business to a competitor. Though perhaps unfortunate for Coinme, "this tort is not meant to stifle healthy competition in competing for business relationships." *Talman Consultants, LLC v. Urevig*, No. 22 C 6540, 2023 WL 1451532, at *6 (N.D. Ill. Feb. 1, 2023). Counts IV and V must also be dismissed.

## RELEVANT FACTUAL BACKGROUND[2]

*The Parties*

Coinme and Zero Hash are competitive cryptocurrency companies, which both developed software that operates cryptocurrency trading platforms. (Dkt. 1 ¶¶ 2, 3.) Their products are sold to other businesses who integrate their software into customer-facing hardware and software. (Dkt. 1 ¶ 32.) One such customer, Coinstar, operates self-service kiosks in grocery stores and other retail stores that allow customers to convert coins into dollar bills. (Dkt. 1 ¶¶ 31, 32.) In 2018, Coinstar engaged Coinme to integrate Coinme's software into Coinstar's systems so that individuals could convert dollar bills and coins into cryptocurrency on certain Coinstar kiosks. (Dkt. 1 ¶¶ 34-37.) Later, Coinstar diversified its suppliers for this business to include Zero Hash, releasing "CINQ"— a Coinstar product that utilizes Zero Hash's API and "allows customers to use cash to purchase cryptocurrency" on its kiosks. (Dkt. 1 ¶¶ 93-100.)

MoneyGram is another Coinme customer that decided to modify its supplier relationships by incorporating Zero Hash's cryptocurrency services. MoneyGram operates a smartphone application (an "app") that allows individuals to "stage" money transfers on the app, and then complete the transfer by providing cash at a physical location, such as pharmacies. (Dkt. 1 ¶¶ 43-45.) In December 2021, MoneyGram entered into an agreement with Coinme to integrate Coinme's software, allowing individuals to exchange cash for cryptocurrency in MoneyGram's

---

[2] For the purposes of this motion, Zero Hash assumes but does not concede that the Complaint's allegations are true.

app. (Dkt. 1 ¶¶ 44, 50-53.) At some point between November 2022 and August 2023, MoneyGram executed an agreement with Zero Hash to provide similar services. (Dkt. 1 ¶ 177.)

*Contractual Relationship Between the Parties*

In late 2019 or early 2020, Coinme and Coinstar sought to expand the presence of Coinstar's kiosks capable of purchasing cryptocurrency to new jurisdictions. (Dkt. 1 ¶¶ 4, 5, 71, 72.) But this business requires a state license, and Coinme was not licensed in all 50 states. (Dkt. 1 ¶¶ 5, 29, 72.) So Coinme approached Zero Hash and sought to obtain the right to use Zero Hash's software (and therefore license) in certain states in which it was unlicensed. (Dkt. 1 ¶¶ 5, 72.)

On March 16, 2020, Coinme and Zero Hash entered into two contracts—the ADA and POA. (Dkt. 1 ¶¶ 70, 73; Dkt. 1-1; Dkt. 1-2.) The ADA allowed Coinme to use certain of Zero Hash's licenses by appointing Coinme as Zero Hash's "Authorized Delegate with the authority to provide" certain "Kiosk Services on [Zero Hash's] behalf." (Dkt. 1-1 § 1.1 & Appendix A.)[3] The ADA has a Confidentiality provision, which states:

> Any and all non-public information . . . arising out of or related [to] this Agreement and the Services, including but not limited to trade secrets, processes, computer software and other proprietary data, research, information, or documentation related thereto, shall be deemed to be confidential information ('Confidential Information'). Each Party agrees to hold such information in strict confidence and not to disclose such information to third parties . . . or to use such information for any purpose whatsoever . . . .

(Dkt. 1-1 § 9.1.) The ADA does not include a non-competition provision.

The parties also executed the Zero Hash LLC Platform Operator Agreement, an agreement that provided the terms by which Coinme could use Zero Hash's trading platform. (Dkt. 1 ¶¶ 71, 76; Dkt. 1-2.) As the agreement granted Coinme access to Zero Hash's proprietary platform,

---

[3] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim[s]." *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (quotation omitted).

Coinme agreed to not "create derivative works from, [or] reverse engineer . . . any technology used to perform Zero Hash Services or otherwise included in the Platform Protocol. . . ." (Dkt. 1-2 § 8.1.) Trading platform access flowed one way—*i.e.*, the POA did not grant Zero Hash access to Coinme's trading platform—so the POA did not include an inverse clause prohibiting Zero Hash from reverse engineering Coinme's trading platform or software. (*See* Dkt. 1-2.)

In February 2021, when the parties had been operating under the binding terms of the ADA and POA for less than a year, they executed a "Second Amendment to Zero Hash LLC Platform Operator Agreement" (the "Second Amendment"). The Second Amendment states that the parties "wish to amend the [POA]" by adding two terms. (Dkt. 1-3.) The first purported additional term states that "Zero Hash will not induce, influence, or encourage" any of Coinme's customers "to alter, terminate, or breach its contractual or other business relationship" with Coinme. (Dkt. 1-3 § 1.) It does not restrict Zero Hash from soliciting Coinme's customers to work with Zero Hash on redundant services. Second, although the Second Amendment does not grant Zero Hash access to Coinme's software, it nevertheless purports to add an inverse term to POA § 8.1, which states that Zero Hash will not "create derivative works from, [or] reverse engineer . . . any technology used in [Coinme's software used in kiosks] or the Platform Operator Platform." (Dkt. 1 ¶¶ 86, Dkt. 1-3 § 2.) The Second Amendment includes no other terms. There is no term restraining Coinme from taking any action, providing Zero Hash with any money, or even conclusorily asserting that consideration is present.

According to the Complaint, Zero Hash and Coinme's business relationship lasted "almost three years," meaning that they parted ways before March 2023. (Dkt. 1 ¶ 11.)

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the complaint "must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (cleaned up). Accordingly, a claim will not "suffice if it tenders naked assertions devoid of further factual enhancement. . . . [W]hen considering the viability of a claim in the face of a Rule 12(b)(6) challenge, [the court] may reject sheer speculation, bald assertions, and unsupported conclusory statements." *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")).

I. **COUNT I (BREACH OF THE ADA) FAILS TO PLAUSIBLY ALLEGE EACH ESSENTIAL ELEMENT OF THE CLAIM.**

Count I – Coinme's effort to turn a confidentiality provision into a broad non-compete – must be dismissed because the Complaint does not plausibly allege the essential element of breach. Under Washington law,[4] to state a claim for breach of contract, Coinme must plausibly allege: (1) "a valid agreement existed between the parties"; (2) "the agreement was breached"; and (3) "the plaintiff was damaged." *King Cnty. Pub. Hosp. Dist. #2 v. Wash. State Nurses Ass'n*, 24 Wash. App. 2d 1005, at *4 (Wash. Ct. App. 2022). "Threadbare recitals of the elements of a cause of action do not suffice," *Illinois ex rel. Hammer v. Twin Rivers Ins. Co.*, No. 16 C 7371, 2017 WL 2880899, at *5 (N.D. Ill. July 5, 2017), and "conclusory allegation[s] of a breach [are] insufficient" to survive a motion to dismiss. *Servpro Indus., Inc. v. Schmidt*, 905 F. Supp. 475, 479 (N.D. Ill. 1995). Instead, a complaint "must state the facts underlying the breach," *id.*, and allege "*how* [the defendant] breached a duty under the contract." *McClellon v. Citigroup Glob. Markets, Inc.*, No. C18-0978-JCC, 2018 WL 5808440, at *5 (W.D. Wash. Nov. 6, 2018) (emphasis added);

---

[4] The Authorized Delegate Agreement is governed by Washington law. (Dkt. 1-1 § 12.8.)

6

*Hennessey v. Americredit Fin. Servs. Inc.*, No. 3:24-CV-5145, 2024 WL 2845939, at *1 (W.D. Wash. June 5, 2024) ("Plaintiff . . . has not specified what Defendants did or failed to do that would amount to a breach of contract. Alleging a breach without facts justifying a claim is not sufficient.").[5] Coinme's allegations of breach fall far short of these standards.

Coinme's core allegation of breach is a prototypical "legal conclusion couched as a factual allegation," which the court is not "bound to accept as true." *See Twombly*, 550 U.S. at 555. Specifically, Coinme alleges that Zero Hash breached "§ 9, the Confidentiality provision of the Authorized Delegate Agreement, by misappropriating confidential information belonging to Coinme to develop CINQ." (Dkt. 1 ¶ 153.) Merely identifying the contractual provision allegedly breached and reciting conduct generically prohibited by the provision does not suffice under *Twombly*. *See Hennessey*, 2024 WL 2845939, at *1; *see also Bausch Health Ireland Ltd.*, 2024 WL 3342508, at *4; *Prewett Enterprises*, 2019 WL 6310495, at *9.

Likely aware of this infirmity, Coinme seeks to bolster its conclusory allegation by asserting that the "confidential information" that Zero Hash allegedly used to develop CINQ is the "technical aspects and economics of the Coinme-Coinstar business relationship and the Coinme Cash-to-Crypto Platform." (Dkt. 1 ¶ 154.) This allegation fares no better. *First*, the allegation that Zero Hash somehow used the "economics" of the "Coinme-Coinstar business relationship" *to develop competing software*—CINQ—makes no sense. How could one possibly use knowledge of the profitability of the Coinme-Coinstar relationship to develop competing software? There is simply no link between the two, and the Complaint makes no attempt to bridge the gap.

---

[5] *See also Prewett Enterprises, Inc. v. Grand Trunk W. R.R. Co.*, No. 18-CV-04254, 2019 WL 6310495, at *9 (N.D. Ill. Nov. 25, 2019) (dismissing breach of contract count for failing to allege facts explaining how agreement was breached); *Chandra V. Pharm. Consultants, LLC v. Bausch Health Ireland Ltd.*, No. 23 C 15958, 2024 WL 3342508, at *4 (N.D. Ill. July 8, 2024) (applying New York law and stating that under *Twombly*, "the complaint must identify the contractual obligation that was breached *and allege how*") (emphasis in original).

*Second*, Coinme's allegation that Zero Hash used the "technical aspects of the Coinme-Coinstar business relationship and the Coinme Cash-to-Crypto Platform" to develop CINQ is intentionally vague and unintelligible. Critically, Coinme avoids alleging that Zero Hash gained access to Coinme's APIs or any other software in connection with the ADA and used such APIs or software to develop CINQ. And that is for good reason; Zero Hash did not have access to this software. Although the POA granted Coinme access to Zero Hash's proprietary trading platform software, *it did not grant Zero Hash access to Coinme's trading platform*. Unable to allege in good faith that Zero Hash used Coinme's APIs or software to develop competition, Coinme is left with the intentionally obtuse allegation that Zero Hash used unexplained "technical aspects" of a business relationship or a trading platform to develop competing software. Without alleging what actual confidential information Zero Hash supposedly used to allegedly develop its competitive software, Coinme has just pled conclusions, not facts plausibly alleging *how* Zero Hash breached the contract. Count I must be dismissed. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (affirming dismissal for failure to plausibly allege breach); *McClellon*, 2018 WL 5808440, at *5 (dismissing breach of contract claim that failed to allege how defendant breached contract); *Hennessey*, 2024 WL 2845939, at *1 (similar); *Prewett Enterprises*, 2019 WL 6310495, at *9 (similar).

## II.   COUNTS II AND III (BREACH OF POA) FAIL TO STATE A CLAIM.[6]

Counts II and III allege that Zero Hash breached the POA—specifically, the terms of the Second Amendment—by entering into business relationships with Coinstar (Count II) and MoneyGram (Count III). Both counts must be dismissed under Rule 12(b)(6) because (a) Coinme cannot allege the essential element of damages, and (b) even if it could, Zero Hash

---

[6] As Coinme admits, Illinois law applies to Counts II and III. (Dkt. 1 ¶ 79 ("The Platform Operator Agreement includes an Illinois . . . choice of law clause."); Dkt. 1-2 § 11.)

received no consideration for the Second Amendment, rendering it unenforceable.

### A. Coinme Cannot Allege Damages Under the Platform Operator Agreement.

One of the essential elements of a breach of contract claim is the existence of damages. *CooLab Foods, LLC v. Creamalicious, Inc.*, 669 F. Supp. 3d 696, 702 (N.D. Ill. Apr. 11, 2023). When a complaint fails to plead sufficient facts showing that the plaintiff was damaged, or reveals that the plaintiff was not, courts do not hesitate to dismiss breach of contract claims at the pleading stage. *See, e.g.*, *70th Court Condo Assoc. v. Ohio Security Ins. Co.*, No. 16 CV 07723, 2016 WL 6582583, at *4-6 (N.D. Ill. Nov. 7, 2016) (grating motion to dismiss where plaintiff had "no damages to allege" in breach of contract claim); *Edward Gray Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 94 C 6992, 1995 WL 437509, at *4-5 (N.D. Ill. Jul 21, 1995) (similar).

The Complaint makes clear that Coinme has no cognizable damages. Under the POA, the "total maximum liability for any loss or damages howsoever caused and in relation to any claim or series of claims relating to this Agreement . . . . shall be limited to the fees charged to Platform Operator *during the 12 months immediately preceding the claim*." (Dkt. 1-2 § 9 (emphasis added).) This limitation of liability provision was not mere boiler plate. In fact, immediately preceding the signature blocks, Zero Hash and Coinme affirmed that the aforementioned "liability disclaimer" was "a material bargained for basis of [the POA]," which was "taken into account and reflected in determining the consideration to be given by each party under [the POA] and in the decision by each party to enter into [the POA]." (Dkt. 1-2 at 18.)

However, Coinme admits that its business relationship with Zero Hash—and therefore the POA—terminated no earlier than March 2023—*i.e.*, more than 12 months before filing suit. (Dkt. 1 ¶¶ 11, 70.) As such, *no fees* were charged "during the 12 months immediately preceding [Coinme's] claim(s)," meaning that there are no recoverable damages. Without cognizable damages, Coinme's claims for breach of the POA (Counts II and III) must be dismissed. *See 70th*

9

*Court Condo Assoc.*, 2016 WL 6582583, at *4-6; *see also Edward Gray Corp.*, 1995 WL 437509, at *4-5.

### B. The Second Amendment Lacks Consideration.

Alternatively, Counts II and III should be dismissed because the Complaint conclusively establishes that there was no consideration for the purported contract amendment, which provides the terms Coinme seeks to enforce. Under Illinois law, "modifications to a contract must have separate, valid consideration." *Aguilera v. Freedman, Anselmo, Lindberg & Rappe, LLC*, No. 10-CV-5488, 2011 WL 2292302, at *7 n.5 (N.D. Ill. June 8, 2011) (citations omitted); *see also Raquet v. Allstate Corp.*, 501 F. Supp. 3d 630, 643 (N.D. Ill. 2020) ("A valid contract amendment under Illinois law requires . . . consideration."). "Consideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Doyle v. Holy Cross Hosp.*, 289 Ill. App. 3d 75, 79, 682 N.E.2d 68, 71 (1997), *aff'd*, 186 Ill. 2d 104, 708 N.E.2d 1140 (1999). "If parties to a contract agree to a modification, consideration is usually found to exist where the obligations of *both parties* are varied. A modification *solely for the benefit* of one of the parties is unenforceable." *Id.* (emphasis added); *see also Marque Medicos Fullerton, LLC v. Zurich Am. Ins. Co.*, 2017 IL App (1st) 160756, ¶ 67, 416 Ill.Dec. 190, 83 N.E.3d 1027, 1044 (1st Dist. 2017) ("valid consideration, on the part of *both parties*, is one of the essential requirements for the formation of a contract") (emphasis in original). Breach of contract claims seeking to enforce a purported amendment that lacked consideration should be dismissed at the pleading stage. *See Ferguson v. GoodMojo Corp.*, No. 18 C 5016, 2019 WL 3776677, at *3 (N.D. Ill. Aug. 12, 2019) (dismissing breach of contract claim, in part, because modification had no consideration); *Aguilera*, 2011 WL 2292302, at *7 n.5 (explaining that complaint could have been dismissed on alternate ground of lack of consideration for contract modification); *Midwest Lending Corp. v. Horton*, 2023 IL App (3d) 220132, ¶ 18, 220

10

N.E.3d 422, 427 (affirming grant of motion to dismiss where the "complaint failed to establish any consideration specifically exchanged between the parties to support the 'Confidentiality and Non-Solicitation Agreement'").

Here, the Complaint conclusively establishes that Zero Hash received no consideration for the Second Amendment. The Second Amendment purports to add two restraints on Zero Hash: an agreement not to induce Coinme's customers to alter or breach their agreements with Coinme and an agreement not to use Coinme's intellectual property. (Dkt. 1-3.) Zero Hash receives nothing in return, and Coinme suffers no legal detriment. Under Illinois law, contract modifications solely for the benefit of one party are unenforceable and claims seeking to enforce them are subject to dismissal. *See Ferguson*, 2019 WL 3776677, at *3 (holding that the plaintiff paying "the amount due on the note is insufficient consideration for a modification, as he was fulfilling his existing obligations under the agreement"); *see also Aguilera*, 2011 WL 2292302, at *7 n.5 (explaining that failure to "offer new consideration" for contract modification rendered it invalid and subject to dismissal); *Horton*, 2023 IL App (3d) 220132, ¶ 18 (similar).

**III.   COUNT IV (TORTIOUS INTERFERENCE) DOES NOT ADEQUATELY ALLEGE THAT ZERO HASH'S ALLEGED INTERFERENCE WAS UNJUSTIFIED OR IMPROPER.**

In Count IV, Coinme alleges that Zero Hash tortiously interfered with Coinme's contract with MoneyGram. (Dkt. 1 ¶¶ 185-87.) Under Illinois law, a claim of tortious interference with contract requires the plaintiff to show, among other elements, that the defendant intentionally and unjustifiably induced a breach of the contract. *Hess v. Kanoski & Assocs.,* 668 F.3d 446, 454 (7th Cir. 2012). To adequately allege this element, Coinme must "plead sufficient *facts* to support a finding that [Zero Hash's] conduct [inducing a breach] was unjustified or improper." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2021 WL 2660772, at *5 (N.D. Ill. June 29, 2021). Coinme does not even try to do so.

11

Instead, Coinme recites this element in wholly conclusory fashion, stating that Zero Hash "intentionally and unjustifiably interfered with [Coinme and MoneyGram's] contracts" and the "MoneyGram's breach would not have occurred but for Zero Hash entering into a business relationship with MoneyGram." (Dkt. 1 ¶¶ 185-87.) It does not allege a single fact in support of these conclusions. Under *Twombly*, this "formulaic recitation of the elements" warrants dismissal of Count IV. 550 U.S. at 555; *see also Fresh N' Pure Distributors, Inc. v. Foremost Farms USA*, No. 11-C-470, 2011 WL 5921450, at *10 (E.D. Wis. Nov. 28, 2011) (applying Illinois law and dismissing tortious interference claim that relied on a legal conclusion to allege the element of unjustified interference); *Life Spine*, 2021 WL 2660772, at **5-6 (dismissing tortious interference count for failing to plausibly allege that interference was unjustified).

## IV. COUNT V (TORTIOUS INTERFERENCE) DOES NOT ADEQUATELY ALLEGE THAT ZERO HASH TORTIOUSLY INTERFERED WITH COINME'S POTENTIAL BUSINESS RELATIONSHIP.

In Count V, Coinme alleges that Zero Hash tortiously interfered with Coinme's prospective business relationship with MoneyGram. Claims for tortious interference with prospective economic advantage require that the plaintiff plead "(1) a reasonable expectancy of entering into a valid [future] business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage[s]." *CNTRST Debt Recovery v. Ybarra*, No. 21 C 2702, 2023 WL 5228026, at *7 (N.D. Ill. Aug. 14, 2023). As an initial matter, this Count should be dismissed because it does not allege – even in a conclusory fashion – that Zero Hash was aware that Coinme expected to enter into a future, additional business relationship with MoneyGram (as opposed to its contractual agreement, which was the subject of Count IV). *See Tamlyn v. BlueStone Advisors, LLC*, No. 17 C 8893, 2018 WL 1920184, at *4 (N.D. Ill. Apr. 24, 2018) (tortious interference claim dismissed where complaint contained only "threadbare allegation" that

12

defendant was aware of prospective business).

Moreover, Count V fails to state a claim because Coinme does not plead facts sufficient to show the element of "purposeful interference—that [Zero Hash] has committed some *impropriety*" in inducing the termination of potential future business. *Talman Consultants*, 2023 WL 1451532, at *6 (*quoting Kapotas v. Better Government Ass'n*, 30 N.E.3d 572, 596 (Ill. App. Ct. 2005)); *see also House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 6845862, at *9 (N.D. Ill. Dec. 4, 2014) (plaintiff must plead facts establishing "improper" or "wrongful" conduct). Courts in this district have explained that "this tort is not meant to stifle healthy competition in competing for business relationships," *Talman Consultants*, 2023 WL 1451532, at *6, and that "conduct to promote one's own economic interest is not generally considered improper unless it is inherently wrongful," *Life Spine*, 2021 WL 2660772, at *5 (quotation omitted). As such, the twin requirements of establishing "'impropriety' and 'purpose of injuring' set the bar high," even at the motion to dismiss stage. *Talman Consultants*, 2023 WL 1451532, at *6. The actual facts alleged in Count V (as opposed to Coinme's legal conclusions and labels) establish mere competition, not the requisite impropriety.

Coinme first attempts to allege "unjustified" or "improper" conduct by bootstrapping its breach of contract claim (Count III) into a tort. Specifically, it contends that Zero Hash's alleged interference with its relationship with MoneyGram was "unjustified" because the Second Amendment prohibited Zero Hash from "inducing, influencing and encouraging" MoneyGram to change or terminate its relationship with Coinme. (Dkt. 1 ¶ 197; *see also id.* ¶ 200 (alleging that Zero Hash's conduct was "unjustified" because it "declined to inform MoneyGram" of the Second Amendment).) But Coinme's actual complaint here is a breach of contract. Allowing Coinme to leverage its contract claim into tort liability "would run contrary to the state's concern with

13

preventing 'every breach of contract from becoming a tort claim for expectancies lost as a result of the breach.'" *House of Brides*, 2014 WL 6845862, at *8 (quoting *Douglas Theater Corp. v. Chicago Title & Tr. Co.*, 288 Ill. App. 3d 880, 888, 681 N.E.2d 564, 569 (1997)); *cf. Slamecka v. Empire Kosher Poultry, Inc.*, No. 03 C 4122, 2004 WL 1882241, at *4 (N.D. Ill. Aug. 12, 2004) (dismissing tortious interference claim where allowing it to proceed "would convert any breach of service or agent contract into a claim for tortious interference with prospective business advantage"). And in any event, the Second Amendment lacked consideration and was therefore unenforceable as a matter of law. *See supra*, Section II.B. Because Coinme's contract claims are "insufficient as a matter of law, . . . those claims provide no basis for an inference of wrongful conduct in connection with the tortious interference claims." *House of Brides*, 2014 WL 6845862, at *9 (dealing with dismissal of antitrust claims); *see also Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765, 807-08 (N.D. Ill. 2011) (explaining that where a non-solicitation clause was invalid, "there would have been no unjustified tampering . . . and thus no claim for tortious interference with economic advantage") (quotation omitted).

Next, unable to allege any facts establishing the element of purposeful interference and impropriety, Coinme attempts to manufacture it by conflating other elements of the tortious interference claim. Namely, it asserts that "Zero Hash's interference was unjustified because MoneyGram had committed to using Coinme's" services. (Dkt. 1 ¶ 199.) But this allegation goes solely to the first element—*i.e.*, that Coinme had "a reasonable expectancy of entering into a valid business relationship." Further, Coinme asserts that "Zero Hash's interference was unjustified because it caused confusion to customers." (*Id.* ¶ 201.) But, at most, this allegation goes to a different element—potential damages. *See Am. Inst. for Preventive Med., Inc. v. Oakstone Pub., LLC*, No. 09-11195, 2010 WL 845977, at *13 (E.D. Mich. Mar. 5, 2010) (statements that merely

caused confusion, "without any showing that the statement[s] [were] made with intent to defraud," "are simply not enough to support a claim of tortious interference"). It says nothing about whether Zero Hash's conduct was improper.

Finally, Coinme attempts to create the illusion of impropriety by summarily alleging, *on information and belief*, that Zero Hash "misrepresented Coinme's financial health to MoneyGram." (Dkt. 1 ¶ 198.) This conclusory assertion does not suffice under Rule 8(a), much less Rule 9(b)'s pleading standards, which must be satisfied when pleading a tortious interference claim – like Coinme's claim in this regard – that "sounds in fraud." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). Coinme does not even attempt to allege the requisite "who, what, when, where and how" of this purported misrepresentation. *See United States ex rel. Hanna v. City of Chicago*, 834 F.3d 775, 779 (7th Cir. 2016). Its conclusion should be disregarded.[7]

After stripping Count V of its legal and factual conclusions, Coinme has offered no factual allegations demonstrating anything other than that Zero Hash "competed normally. . . . [T]ort law does not penalize a business for acting to further its own interests." *Talman Consultants*, 2023 WL 1451532, at *6 (granting motion to dismiss tortious interference claim where plaintiff had alleged no facts from which impropriety could be inferred). Count V must be dismissed.

## CONCLUSION

For the foregoing reasons, Zero Hash requests that this Court grant its Motion to Dismiss.

---

[7] And in any event, Coinme does not even attempt to allege, as it must to plead fraud on information and belief under Rule 9(b): (1) that the facts constituting fraud are not accessible to Coinme; and (2) grounds for its suspicions that make the suspicions plausible. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011).

15

Dated: December 19, 2024                               Respectfully submitted,

                                                               By:  /s/  *David Jorgensen*
                                                                         Attorney for Zero Hash LLC

David Jorgensen
Sean Sullivan
Croke Fairchild Duarte & Beres, LLC
191 N. Wacker Dr., Ste 3100
Chicago, IL 60606
312-641-0881
Email: djorgensen@crokefairchild.com
Email: ssullivan@crokefairchild.com

Michael Frisch
Croke Fairchild Duarte & Beres, LLC
180 N. LaSalle St., Suite 3400
Chicago, IL 60601
847-530-7419
Email: mfrisch@crokefairchild.com

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2024, a copy of the above document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

                                                */s/ David G. Jorgensen*
                                                David G. Jorgensen
                                                Counsel for Zero Hash LLC