# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COINME INC., <br><br> Plaintiff, <br><br> v. <br><br> ZERO HASH LLC, <br><br> Defendant. | Case No.: 1:24-cv-10972 <br><br> Hon. Sharon Johnson Coleman <br><br> JURY DEMANDED |

## MEMORANDUM OF LAW IN OPPOSITION OF DEFENDANT ZERO HASH LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)

**MASSEY & GAIL LLP**

Suyash Agrawal
Constance Grieves
Bret Vallacher
Christopher M. Walling
50 East Washington Street, Suite 400
Chicago, IL 60602
Tel: (312) 283-1590
sagrawal@masseygail.com
cgrieves@masseygail.com
bvallacher@masseygail.com
cwalling@masseygail.com

*Attorneys for Plaintiff Coinme Inc.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION AND FACTUAL BACKGROUND ................................................................... 1

LEGAL STANDARD ........................................................................................................................ 2

ARGUMENT ..................................................................................................................................... 2

I.     Coinme Alleged Facts Making Plausible Its Claims That Zero Hash Misappropriated Its Confidential Information and Breached the Authorized Delegate Agreement. .............. 3

II.    Zero Hash's Legal Arguments Regarding the Platform Operator Agreement Fail. ............ 4

      A.     Zero Hash Misreads the Platform Operator Agreement's Limitation of Liability Provision, Which Limits Coinme's Liability, Not Zero Hash's. ............................ 4

      B.     The Second Amendment to the Platform Operator Agreement Was Supported by Consideration, Which Zero Hash Already Knows. ............................................ 7

III.   Zero Hash's Interference in Coinme's Contract with MoneyGram Was Unlawful; It Was Not Privileged to Induce MoneyGram's Breach. ......................................................... 8

IV.   Coinme Sufficiently Pleaded Its Intentional Interference with Prospective Economic Advantage Cause of Action. ................................................................................................ 10

CONCLUSION ................................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**

*37 E. 50th St. Corp. v. Rest. Grp. Mgmt. Servs., L.L.C.*,
  156 A.D.3d 569 (1st Dept. 2017) .................................................................................... 8

*70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*,
  No. 16 -CV-07723, 2016 WL 6582583 (N.D. Ill. Nov. 7, 2016) ............................................ 6

*Am. States Ins. Co. v. Bailey*,
  285 Ill. App. 3d 687 (1st Dist. 1996) ................................................................................. 9

*Anderson v. Vanden Dorpel*,
  172 Ill. 2d 399 (1996) ...................................................................................................... 10

*Bass v. SMG, Inc.*,
  328 Ill. App. 3d 492 (1st Dist.2002) ................................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................................... 2, 4

*Brant v. Schneider Nat'l, Inc.*,
  43 F.4th 656 (7th Cir. 2022) .............................................................................................. 2

*Chapman v. Yellow Cab Cooperative*,
  875 F.3d 846 (7th Cir. 2017) ............................................................................................. 2

*Cohabaco Cigar Co. v. U.S. Tobacco Co.*,
  No. 98 C 1580, 1998 WL 773696 (N.D. Ill. Oct. 30, 1998) .................................................. 12

*Cook Cnty., Illinois v. Wolf*,
  461 F. Supp. 3d 779 (N.D. Ill. 2020) ................................................................................. 7

*Douglas Theater Corp. v. Chicago Title & Tr. Co.*,
  288 Ill. App. 3d 880 (1st Dist. 1997) ................................................................................ 11

*Edward Gray Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
  94 F.3d 363 (7th Cir. 1996) ............................................................................................... 6

*Edward Gray Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*,
  No. 94 C 6992, 1995 WL 437509 (N.D. Ill. July 21, 1995) ................................................... 6

*Faith Freight Forwarding, Corp. v. Ruiz*,
  No. 95 C 9560, 1997 WL 159207 (N.D. Ill. March 24, 1997) .............................................. 12

*Geinosky v. City of Chicago*,
  675 F.3d 743 (7th Cir. 2012) ............................................................................................. 7

*Greene v. Mizuho Bank, Ltd.*,
   206 F. Supp. 3d 1362 (N.D. Ill. 2016) .................................................................................. 10

*Hirshfield v. Briskin*,
   447 F.2d 694 (7th Cir. 1971) ................................................................................................ 13

*House of Brides, Inc. v. Alfred Angelo, Inc.*,
   No. 11 C 07834, 2014 WL 6845862 (N.D. Ill. Dec. 4, 2014) ......................................... 11, 12

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
   131 Ill. 2d 145 (1989) ............................................................................................................ 9

*J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*,
   162 Ill. 2d 265 (1994) ............................................................................................................ 7

*Kiosk Promotions, Inc. v. Texas Wiz, LLC*,
   No. 1:19-CV-01847, 2021 WL 4498907 (N.D. Ill. Mar. 30, 2021) ........................................ 9

*Life Spine, Inc. v. Aegis Spine, Inc.*,
   No. 19-CV-092, 2021 WL 2660772 (N.D. Ill. June 29, 2021) ............................................... 8

*Nation v. Am. Cap., Ltd.*,
   682 F.3d 648 (7th Cir. 2012) ................................................................................................. 9

*Pampered Chef v. Alexanian*,
   804 F. Supp. 2d 765 (N.D. Ill. 2011) ................................................................................... 12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ............................................................................................... 12

*Quake Constr., Inc. v. Am. Airlines, Inc.*,
   141 Ill.2d 281 (1990) ............................................................................................................. 6

*Reger Development, LLC v. National City Bank*,
   592 F.3d 759 (7th Cir. 2010) ................................................................................................. 2

*Reuben H. Donnelley Corp. v. Brauer*,
   275 Ill. App. 3d 300 (1st Dis. 1995) ...................................................................................... 9

*Roy v. Coyne*,
   259 Ill. App. 3d 269 (1st Dist. 1994) ..................................................................................... 9

*Slamecka v. Empire Kosher Poultry, Inc.*,
   No. 03 C 4122, 2004 WL 1882241 (N.D. Ill. Aug. 12, 2004) ............................................. 11

*Soderlund Brothers, Inc. v. Carrier Corp.*,
   278 Ill. App. 3d 606 (1st Dist.1995) .................................................................................... 12

*Speakers of Sport, Inc. v. ProServ, Inc.*,
   178 F.3d 862 (7th Cir. 1999) .................................................................................................. 10

*Stampley v. Altom Transp., Inc.*,
   958 F.3d 580 (7th Cir. 2020) .................................................................................................... 5

*Uribe v. Merchants Bank of New York*,
   91 N.Y.2d 336 (1998) ............................................................................................................... 5

*Webb v. Frawley*,
   906 F.3d 569 (7th Cir. 2018) .................................................................................................... 9

*White Knight Constr. Contractors, LLC v. Haugh*,
   216 A.D.3d 1345 (3d Dept. 2023) ............................................................................................ 5

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012) .................................................................................................... 2

*Wilson v. Jadamo Corp.*,
   No. 21-CV-06391, 2023 WL 1451530 (N.D. Ill. Feb. 1, 2023) ............................................... 5

**Rules**

Fed. R. Civ. P. 12 .............................................................................................................................. 2, 4

**INTRODUCTION AND FACTUAL BACKGROUND**

The relationship between Zero Hash LLC (hereafter "Zero Hash") and Coinme Inc. (hereafter "Coinme") was not always antagonistic.[1] The two cryptocurrency companies were initially excited to work together to expand Coinme's business with Coinstar throughout the United States. They entered into multiple contracts, and Coinme shared non-public technical and economic information with Zero Hash, including the economics of its relationship with its customer Coinstar and its application programming interfaces ("APIs"). Under one contract, Zero Hash agreed not to use Coinme's confidential information to create derivative works and not to encourage any Coinme customer to alter its business relationship with Coinme.

But despite these contracts and Zero Hash's promise not to pursue Coinme's customers, it used Coinme's confidential information to steal Coinme's business with Coinstar by developing a cryptocurrency trading platform called CINQ that displaced Coinme's Cash-to-Crypto platform on Coinstar's kiosks. Zero Hash also induced another Coinme customer, MoneyGram, to breach its contracts with Coinme and terminate its business relationship with Coinme. Coinme brought the instant action because of Zero Hash's actions, which constituted breaches of its contracts with Coinme and business torts.

Zero Hash moved this Court to dismiss Coinme's Complaint (Dkt. 1), misreading Coinme's allegations and the contracts at issue to argue that it was free to steal Coinme's customers using Coinme's confidential information. It also argued that one of the contracts between the two lacked consideration despite its CEO, Edward Woodford, confirming that consideration contemporaneously. None of Zero Hash's arguments stands up to scrutiny. This Court should deny the Motion to Dismiss (Dkt. 17) in full.

---

[1] The facts summarized here derive from the Complaint, Dkt. 1.

**LEGAL STANDARD**

"In evaluating the complaint's sufficiency, we accept as true all well-pled facts and make any reasonable inferences in the non-movant's favor. Dismissal under Rule 12(b)(6) is appropriate if the complaint fails to provide enough facts to state a claim to relief that is plausible on its face. A plaintiff needs to provide enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief. If the complaint is plausible, the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022) (cleaned up) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reger Development, LLC v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010); *Chapman v. Yellow Cab Cooperative*, 875 F.3d 846, 848 (7th Cir. 2017)). A party "may elaborate on her allegations so long as the elaborations are consistent with the pleading" in opposing a motion to dismiss. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012) (gathering cases).

**ARGUMENT**

Zero Hash's brief in support of its Motion to Dismiss (Dkt. 17-1) relies on misreading the Complaint and ignoring facts in its knowledge to argue that this Court should dismiss this case. Coinme alleged more than enough to make all its causes of action plausible. As shown in the Complaint, Zero Hash misappropriated Coinme's confidential technical and business information in violation of the Authorized Delegate Agreement. Zero Hash also stole multiple customers from Coinme, breaching the Platform Operator Agreement and unlawfully interfering with Coinme's contracts and business relations. None of Zero Hash's arguments, when applying the alleged facts and the correct legal tests, succeeds. This Court should deny its Motion to Dismiss.

I. **Coinme Alleged Facts Making Plausible Its Claims That Zero Hash Misappropriated Its Confidential Information and Breached the Authorized Delegate Agreement.**

Zero Hash declines to discuss the factual allegations supporting Count I and Coinme's claims that Zero Hash misappropriated confidential information. Zero Hash does not dispute that the Authorized Delegate Agreement contains a broad confidentiality provision. The parties must "hold [] in strict confidence and not to disclose such information to third parties … or to use such information for any purpose whatsoever except as permitted by this Agreement or as expressly authorized in writing" *all* non-public information, including but not limited to "trade secrets, processes, computer software and other proprietary data, research, information, or documentation related thereto." Dkt. 1 ¶ 77.

Given its agreement on the provision's language, Zero Hash argues that the Complaint does not plead enough to make Coinme's claim of breach of this provision plausible. But this argument ignores the following factual allegations:

- Coinme provided Zero Hash with confidential business information regarding its relationship with Coinstar, including details of the economics of the relationship. *Id.* at ¶¶ 87, 88, 90.

- Coinme provided Zero Hash with confidential technical information regarding the Coinme Cash-to-Crypto Platform, including confidential APIs. *Id.* at ¶¶ 89, 117, 121.

- While it took Coinme six years and tens of millions of dollars to build the Coinme Cash-to-Crypto Platform for Coinstar machines, Zero Hash was able to use Coinme's confidential business and technical information to develop the CINQ platform in a fraction of the time. *Id.* at ¶¶ 117–22.

- The CINQ platform appears and functions identically to the Coinme Cash-to-Crypto platform, which shows that Zero Hash improperly reused Coinme's confidential information. *Id.* at ¶¶ 101–13, 117.

In the face of these allegations, Zero Hash argues that (1) business information is not "use[ful]" (Dkt. 17-1 at 7) in software development, and (2) Zero Hash did not have access to Coinme's confidential technical information. Dkt. 17-1 at 7–8. But these are *fact* arguments that

3

cannot support a Rule 12(b)(6) motion. There are "plausible grounds to infer" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)) that Zero Hash took the confidential "profitability of the Coinme-Coinstar relationship" (Dkt. 17-1 at 7) into account when stealing Coinstar away from Coinme, as that information would allow Zero Hash to undercut Coinme. To the extent that Zero Hash wants to introduce facts that a competitor's profitability is not useful information when developing competing software, it is free to do so after discovery.

Finally, contrary to Zero Hash's arguments, Coinme *does* allege that Zero Hash had access to its confidential APIs and other technical information and used that information to develop CINQ. *Compare* Dkt. 1 at §§ 89, 117, 121 ("Zero Hash and Coinstar were able to rapidly bring CINQ to market by improperly using Coinme's non-public, confidential APIs and other proprietary information.") *with* Dkt. 17-1 at 8 ("Coinme avoids alleging that Zero Hash gained access to Coinme's APIs or any other software in connection with the ADA and used such APIs or software to develop CINQ."). The confidentiality clause is broad, covering any non-public information "arising out of or related [to] this Agreement and the Services [herein]." Dkt. 1-1 at 7, § 9.1. Zero Hash's fact arguments that it "did not have access to the software" and a different contract (the Platform Operator Agreement) "did not grant Zero Hash access to Coinme's trading platform" (Dkt. 17-1 at 8) is irrelevant to the confidentiality clause in the ADA and based on facts outside of the Complaint. Again, Zero Hash cannot win dismissal by asserting factual arguments. The Court should deny its Motion to Dismiss Count I.

II. **Zero Hash's Legal Arguments Regarding the Platform Operator Agreement Fail.**

    A. **Zero Hash Misreads the Platform Operator Agreement's Limitation of Liability Provision, Which Limits Coinme's Liability, Not Zero Hash's.**

Zero Hash's intentional choice in its brief to reproduce a small portion of the limitation of liability provision upon which it relies shows the weakness of its interpretation regarding the

availability of damages to Coinme. It rests its argument that "Coinme has no cognizable damages" (Dkt 17-1 at 9) on the following sentence:

> Except with respect to misuse of Zero Hash's intellectual property, indemnification liability, failure to pay or breach of confidentiality by Platform Operator, the total maximum liability for any loss or damages howsoever caused and in relation to any claim or series of claims relating to this agreement shall be limited to the fees charged to Platform Operator during the 12 months immediately preceding the claim.

Dkt. 1-2 at 13 (capitalization changed). But Coinme, as the Platform Operator, does not have claims against Zero Hash for the "misuse of **Zero Hash's** intellectual property," for a "failure to pay," or for "breach of confidentiality by **Platform Operator**." Zero Hash's brief excerpts hide the actual limitation from the Court: The sentence limits Zero Hash's damages, not Coinme's, to the fees charged to Coinme in the 12 months preceding the claim.[2]

The text is clear, and this Court does not need any rule of interpretation as guidance. But, to the extent the Court or Zero Hash disagrees, this Court should construe the Platform Operator Agreement against its drafter, Zero Hash. *Compare* Dkt. 1-1 at 11, § 12-12 (waiving application of any rule of construction against the drafting party in the Authorized Delegate Agreement) *with* Dkt 1-2 (no waiver of construction rule in Platform Operator Agreement). "[A]ny ambiguity in a contract must be construed against the drafter." *White Knight Constr. Contractors, LLC v. Haugh*, 216 A.D.3d 1345, 1348 (3d Dept. 2023) (*citing Uribe v. Merchants Bank of New York*, 91 N.Y.2d 336, 341(1998)); *see also Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020) ("Importantly, we must resolve any ambiguity in a contract against the drafter.") (applying Illinois

---

[2] Zero Hash does not make an argument regarding the sentence that limits its liability. A defendant waives all arguments not raised in its opening motion to dismiss brief. *Wilson v. Jadamo Corp.*, No. 21-CV-06391, 2023 WL 1451530, at *2 (N.D. Ill. Feb. 1, 2023).

5

law).³ Therefore, this Court must interpret any ambiguity in the limitation of liability clause against Zero Hash.

Finally, Zero Hash's insurance cases provide no support for its argument that the limitations clause can bar Coinme from pleading the *prima facie* element of damages. *See* Dkt. 17-1 at 9. *Edward Gray Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, No. 94 C 6992, 1995 WL 437509 (N.D. Ill. July 21, 1995), was (1) a decision on a summary judgment standard and (2) **reversed** by the Seventh Circuit, which found that there was a genuine issue of material fact as to whether the Plaintiff suffered damages. *Edward Gray Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 94 F.3d 363, 368 (7th Cir. 1996). *70th Ct. Condo Ass'n v. Ohio Sec. Ins. Co.*, No. 16 -CV-07723, 2016 WL 6582583 (N.D. Ill. Nov. 7, 2016) held that an insured could not sue an insurer for contract damages after the insurer paid damages to the insured based on a contractual appraisal. *Id.* at 6. The *70th Ct.* court relied on Illinois law, which gave insurance appraisals "substantial deference" and "wide discretion." Even considering that law, that court allowed the condo association to replead the claim and attempt to plead facts overcoming this deference. *Id.* at *5–*6. These cases do not contradict the traditional rule that "[i]f the language of an alleged contract is ambiguous regarding the parties' intent, the interpretation of the language is a question of fact which a [ ] court cannot properly determine on a motion to dismiss." *Quake Constr., Inc. v. Am. Airlines, Inc.*, 141 Ill.2d 281, 288–89 (1990). At most, Zero Hash can argue that the clause is ambiguous; therefore, this Court cannot dismiss the cause of action at this stage.

The limitation of liability clause cited by Zero Hash, which only limits Coinme's liability, provides this Court with no basis to dismiss Count II.

---

³ The Platform Operator Agreement states, in separate places, that Illinois and New York law govern the agreement. *See* Dkt. 1-2 at 14 ("Governing Law"), 16 ("Governing Law").

### B. The Second Amendment to the Platform Operator Agreement Was Supported by Consideration, Which Zero Hash Already Knows.

Contrary to Zero Hash's arguments, it knows there was valid consideration for the Second Amendment to the Platform Operator Agreement. Coinme attaches to this Opposition a declaration confirming that Zero Hash's consideration for entering into the Second Amendment to the Platform Operator Agreement was Coinme's agreement to another contract, otherwise not relevant to this dispute, called the Zero Hash LLC Services Agreement.[4] Coinme told Zero Hash that it would not agree to the Services Agreement unless Zero Hash agreed to the Second Amendment to the Platform Operator Agreement. Ex. A (Declaration of S. Choi) at ¶ 5. Zero Hash agreed to the Second Amendment in consideration for Coinme's agreement to the Services Agreement. *Id.* at ¶¶ 5–10. Edward Woodford, the CEO of Zero Hash, sent both agreements simultaneously to Sung Choi, Senior Vice President at Coinme, for signature on February 22, 2021. *Id.* at ¶ 10.

This Court may consider these additional allegations regarding consideration despite no reference to the Zero Hash LLC Services Agreement in the text of the Second Amendment to the Platform Operator Agreement. The Second Amendment contains no integration clause, and this Court may review additional evidence to determine a key term absent from a contract. *See J & B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 274–76 (1994) (parol evidence admissible to determine contractual term if contract lacks integration clause and is otherwise only

---

[4] Although Coinme could amend its complaint in response to Zero Hash's assertion that the agreement lacked consideration, the law in this District and the Seventh Circuit does not require Coinme to do so. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) ("A party appealing a Rule 12(b)(6) dismissal may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings."); *Cook Cnty., Illinois v. Wolf*, 461 F. Supp. 3d 779, 782 (N.D. Ill. 2020) ("The court must also . . . additional facts set forth in [the plaintiff's] brief opposing dismissal, so long as those additional facts are consistent with the pleadings.") (internal quotations omitted). Here, Coinme's additional allegations that the Second Amendment to the Platform Operator Agreement are entirely consistent with its Complaint that asserted the Second Amendment to the Platform Operator Agreement.

partially integrated); *37 E. 50th St. Corp. v. Rest. Grp. Mgmt. Servs., L.L.C.*, 156 A.D.3d 569, 569–70 (1st Dept. 2017) (same). Here, the key term is the consideration for the Second Amendment, which (as Zero Hash has known since February 2021) was Coinme's assent to the Services Agreement. Zero Hash's arguments to dismiss Counts II and III of the Complaint fail.

**III. Zero Hash's Interference in Coinme's Contract with MoneyGram Was Unlawful; It Was Not Privileged to Induce MoneyGram's Breach.**

Zero Hash cannot support its argument that Coinme pleaded insufficient facts to support its intentional interference with a complete reading of the Complaint. The Complaint satisfies the elements of the claim that Zero Hash presents in its brief: Coinme had a contract with MoneyGram, and Zero Hash knew about it. Dkt. 1. at ¶¶ 50–65, 136–38. Zero Hash promised Coinme that it would not steal its customers. *Id.* at ¶¶ 80–86, 135. Zero Hash wrongfully went back on that promise and induced MoneyGram to breach that contract by replacing Coinme as MoneyGram's provider of cryptocurrency exchange services. *Id.* at ¶¶ 139–48. That breach harmed Coinme. *Id.* at ¶¶ 149, 189. Those facts state a cause of action for intentional interference with contract according to Zero Hash's authority: "[Plaintiffs] must allege enough facts to establish the following: (1) a valid contract, (2) defendant's knowledge of the contract, (3) defendant's intentional and unjustified inducement of a breach of contract, (4) a subsequent breach of contract caused by defendant's wrongful conduct, and (5) damages." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19-CV-092, 2021 WL 2660772, at *4 (N.D. Ill. June 29, 2021) (internal quotations omitted) (cited in Dkt. 17-1 at 11).

However, under Illinois law, Coinme disputes that those five elements are correct for a tortious interference with contract cause of action. The proper elements are "(1) the existence of a valid and enforceable contract between the plaintiff and a third person, (2) defendant's knowledge of the existing contract, (3) defendant's intentional inducement of the breach, (4) a subsequent

8

breach by the third person, and (5) damage to the plaintiff." *Am. States Ins. Co. v. Bailey*, 285 Ill. App. 3d 687, 690–91 (1st Dist. 1996). For an intentional interference **with contract** claim, "[a]llegations of malice are not required to adequately plead the tort of intentional interference with contractual relations [and] justification is an affirmative defense which a defendant must plead and subsequently prove." *Id.* at 691 (internal citations omitted) (citing *Roy v. Coyne*, 259 Ill. App. 3d 269, 283–84 (1st Dist. 1994), *Reuben H. Donnelley Corp. v. Brauer*, 275 Ill. App. 3d 300, 313 (1st Dis. 1995)).[5] Only if a plaintiff pleads the affirmative defense of privilege to interfere does she have the burden to plead that the defendant's conduct was malicious or unjustified. *See Roy*, 259 Ill. App. 3d at 282 (analyzing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145 (1989)).[6]

Coinme does not plead that Zero Hash had a privilege for inducing MoneyGram's breach of contract. "[P]rivilege often arises out of specific legally defined rights or statuses." *Kiosk Promotions, Inc. v. Texas Wiz, LLC*, No. 1:19-CV-01847, 2021 WL 4498907, at *4 (N.D. Ill. Mar. 30, 2021) (discussing privileges available to defendants fighting an intentional interference with contract claim). Therefore, because Coinme did not plead that Zero Hash has a "specific legally defined right" to interfere in Coinme's contracts with MoneyGram, Zero Hash's burden is to prove as an affirmative defense that it has the privilege to induce MoneyGram to breach its contracts with Coinme.

---

[5] A plaintiff must plead a defendant's malicious or unjustified intent when bringing a cause of action for intentional interference with business relations (which does not require that a third party breach a contract with the Defendant). *See infra* at 10.

[6] The Seventh Circuit has noted Illinois courts have not definitively stated which party bears the burden of proving a defendant's privilege to interfere with a contract. *See Webb v. Frawley*, 906 F.3d 569, 578 (7th Cir. 2018); *Nation v. Am. Cap., Ltd.*, 682 F.3d 648, 652 n.2 (7th Cir. 2012). These statements compare *Roy* with *HPI Health Care Services*, but *Roy* thoroughly reasoned that *HPI* was only determining the placement of the burden conditional on a plaintiff pleading it. *Roy*, 259 Ill. App. 3d at 282.

9

Zero Hash impliedly presents a privilege of its business interests in its brief, arguing that it was simply a "competitor" to Coinme (Dkt. 17-1 at 3), but that privilege is not a defense to intentional interference. *Greene v. Mizuho Bank, Ltd.*, 206 F. Supp. 3d 1362, 1372 (N.D. Ill. 2016) ("[T]he privilege [of competition] is contingent on the interference being incidental, not intentional."); *see also Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999) ("[Competition] does not privilege inducing a breach of contract."). This Court should deny Zero Hash's Motion to Dismiss Count IV.

IV. **Coinme Sufficiently Pleaded Its Intentional Interference with Prospective Economic Advantage Cause of Action.**

The Complaint contains sufficient allegations to support Coinme's claims that Zero Hash unlawfully interfered with its prospective business relationship with Coinme. "To state a cause of action for intentional interference with prospective economic advantage, a plaintiff must allege (1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 406–07 (1996). Coinme's Complaint alleges facts that satisfy these *prima facie* elements. Coinme has a reasonable expectancy of entering further business relationships with MoneyGram, given their agreements and Coinme agreeing not to provide services to MoneyGram's competitors. Dkt. 1 at ¶¶ 191–193. Zero Hash knew of this business expectancy based on Coinme's and MoneyGram's public announcements and industry practices. *Id.* at ¶¶ 137–38, 194. Zero Hash intentionally interfered with this prospective business relationship by entering a relationship with MoneyGram to replace Coinme as its provider of cryptocurrency transaction services. *Id.* at ¶¶ 139–44, 195–96, 202. Zero Hash's actions were unjustified because of its commitment to Coinme not to steal its

10

customers like MoneyGram and its misrepresentations to MoneyGram regarding (1) Coinme's financial health and (2) Zero Hash's prior commitment to Coinme. *Id.* at ¶¶ 197–200. Zero Hash's actions damaged Coinme, which expected to profit from its relationship with MoneyGram. *Id.* at ¶ 204. Contrary to Zero Hash's arguments, Coinme was not "unable to allege any facts" regarding its intentional interference claim. Dkt. 17-1 at 14.

Unlike its intentional interference with contract claim, Coinme agrees that for its intentional interference with business relationship claim, it must plead facts that make its claims of Zero Hash's actions being unjustified plausible. However, Zero Hash provides no authority for its argument that it is free to break its promises to Coinme and misrepresent them to MoneyGram because those facts only support "Coinme's actual complaint here[,] breach of contract." *Id.* at 13. None of Zero Hash's authorities supports the proposition. All hold that a party cannot sue a contractual counterparty for intentional interference *if* that counterparty did not direct actions toward third parties. *See House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 6845862, at *8 (N.D. Ill. Dec. 4, 2014) ("[Defendant's] actions were directed in the first instance toward [Plaintiff], not [Plaintiff's] customers. Count IX is therefore dismissed with prejudice.") (cited in Dkt. 17-2 at 13); *Douglas Theater Corp. v. Chicago Title & Tr. Co.*, 288 Ill. App. 3d 880, 888 (1st Dist. 1997) ("We agree with defendants that the requirement of action toward third parties prevents every breach of contract from becoming a tort claim for expectancies lost as a result of the breach.") (cited in Dkt. 17-1 at 14); *Slamecka v. Empire Kosher Poultry, Inc.*, No. 03 C 4122, 2004 WL 1882241, at *4 (N.D. Ill. Aug. 12, 2004) (holding that the defendant to a tortious interference with prospective business relationship claim cannot be the party to which that relationship lies) (quoting *Bass v. SMG, Inc.*, 328 Ill. App. 3d 492, 504 (1st Dist.2002) ("The tortfeasor must be a third party to the contractual or expectancy relationship.")) (cited in Dkt. 17-1 at 14). Those authorities here support

11

Coinme's claim that Zero Hash, a non-party to the Coinme/MoneyGram business relationship, can be liable when it induced MoneyGram to breach its agreement with Coinme.

Zero Hash is also incorrect in concluding that its promise in the Second Amendment to the Platform Operator Agreement must be an enforceable contract to provide a basis for Coinme's interference with business relationship claim. First, the promise is enforceable because (as Zero Hash knows) Zero Hash made it in exchange for Coinme agreeing to the Services Agreement. *See supra* at 7. Second, Zero Hash's promise to Coinme here differs from the non-solicitation agreement in *Pampered Chef v. Alexanian*, 804 F. Supp. 2d 765 (N.D. Ill. 2011), or the antitrust violation in *House of Brides*, 2014 WL 6845862 at \*9. Misstatements and deceit do not need to be contractual to be unlawful; the promise here to Coinme, the statement to MoneyGram misrepresenting Coinme's financial health, the failure to inform MoneyGram of Zero Hash's commitment to Coinme, and the confusion caused to Coinme's MoneyGram customers (Dkt. 1 at ¶¶ 198–201) are all the kind of "improper competitive strategies that employ [] deceit, [] or deliberate disparagement" which constitute intentional interference with business relationship. *Cohabaco Cigar Co. v. U.S. Tobacco Co.*, No. 98 C 1580, 1998 WL 773696, at \*7 (N.D. Ill. Oct. 30, 1998) (citing *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 616 (1st Dist.1995); *Faith Freight Forwarding, Corp. v. Ruiz*, No. 95 C 9560, 1997 WL 159207, \*6 (N.D. Ill. March 24, 1997).

Finally, as Zero Hash acknowledges, Coinme can plead facts with particularity on information and belief if "(1) the facts constituting the fraud are not accessible to the plaintiff and (2) the plaintiff provides the grounds for his suspicions." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011) (internal quotations omitted). When "virtually every allegation was made on information and belief, without averring supporting facts,

and regardless of whether or not the matter was peculiarly within the adverse party's knowledge," a court cannot sustain information and belief pleading. *Hirshfield v. Briskin*, 447 F.2d 694, 697 (7th Cir. 1971). But here, Coinme pleaded the requisite information regarding Zero Hash's statements to MoneyGram to give Zero Hash the grounds for its suspicions and why the facts are not accessible to Coinme. First, Zero Hash made a statement to MoneyGram without Coinme's involvement. *See* Dkt. 1 at ¶ 198. Second, Coinme also pleaded its grounds for suspicion; MoneyGram replaced Coinme with Zero Hash for its cryptocurrency business. Where the facts are in the unique possession of Zero Hash and a third party (MoneyGram), Coinme has pled enough to satisfy its burden. This Court should deny Zero Hash's motion to dismiss Count V.

## CONCLUSION

This Court should deny Zero Hash's Motion to Dismiss in full.

Dated: January 30, 2025

Respectfully submitted,

**MASSEY & GAIL LLP**

/s/ *Christopher M. Walling*
Suyash Agrawal
Constance Grieves
Bret Vallacher
Christopher M. Walling
50 East Washington Street, Suite 400
Chicago, IL 60602
Tel: (312) 283-1590
sagrawal@masseygail.com
cgrieves@masseygail.com
bvallacher@masseygail.com
cwalling@masseygail.com

*Attorneys for Plaintiff Coinme Inc.*

13