IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COINME INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:24-cv-10972 |
| | ) | |
| v. | ) | Honorable Sharon Johnson Coleman |
| | ) | |
| ZERO HASH LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT ZERO HASH LLC'S MOTION TO DISMISS
<u>PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)</u>**

**PRELIMINARY STATEMENT**

Coinme Inc.'s ("Coinme") Opposition to Zero Hash LLC's ("Zero Hash") Motion to Dismiss (respectively, the "Opposition" and "Motion") fails to rebut the critical pleading failures identified in Zero Hash's Motion. Indeed, the Opposition only further reveals this case for what it is: a desperate attempt by a flagging company to bully its competitor into settling baseless claims. Though Zero Hash and Coinme did not have an agreement with a non-competition clause, each Count of the Complaint seeks compensation (whether contract- or tort-based) because Zero Hash recently won business from two Coinme customers—Coinstar Asset Holdings, LLC ("Coinstar") and MoneyGram Payment Systems, Inc. ("MoneyGram"). As discussed in Zero Hash's Motion and below, Coinme's Complaint – though a creative effort at attempting to manufacture a remedy for normal market competition – is fatally deficient.

In Count I, Coinme interprets the Authorized Delegate Agreement's ("ADA") Confidentiality provision as prohibiting any and all competition, and asserts that Zero Hash breached it by contracting with Coinstar. But to allege a breach of that Confidentiality provision, the Complaint must allege *facts* plausibly establishing that Zero Hash *used* particular Confidential Information belonging to Coinme when contracting with Coinstar. The Complaint does not do so, instead relying on pure conclusions and vague statements that fall far short of alleging the necessary facts. Remarkably, Coinme's arguments rest almost entirely on an attempt to mislead the Court into construing the Complaint as alleging (a) "that Zero Hash *had access to* [Coinme's] confidential APIs and other technical information and [b] *used* that information to develop CINQ." (Dkt. 25 at 4) (emphasis added). The Complaint carefully avoids alleging that Zero Hash had or used Coinme's API because it did not, and nothing in the parties' agreements gave it such access. Count I must be dismissed.

1

Next, Counts II and III allege that Zero Hash breached the Zero Hash LLC Platform Operator Agreement between Zero Hash and Coinme (the "POA") by contracting with Coinstar and MoneyGram. But the POA expressly limits liability under its terms to the fees charged "during the 12 months immediately preceding the claim," and no fees were charged in the twelve months preceding Coinme's claims. As such, Coinme has no damages. Coinme seeks to avoid inevitable dismissal on this basis by asserting that the limitation of liability clause applies only to Zero Hash's claims, not Coinme's, or that the provision is ambiguous. It is not. The clause is clear: it applies to "any" loss in relation to "any" claim. Counts II and III must be dismissed.

Moreover, Counts II and III are premised on an alleged breach of a purported amendment to the POA—*i.e.*, the Second Amendment to Zero Hash LLC Platform Operator Agreement (the "Second Amendment"). On its face, the Second Amendment contains no consideration, so it is unenforceable. Desperate to avoid this fatal defect, Coinme proffers an affidavit, which it asserts shows that Zero Hash received consideration in the form of Coinme agreeing to execute the separate "Zero Hash LLC Services Agreement." (Dkt. 25 at 7.) But even if the affidavit's exhibit supported this conclusion (it does not – it shows the opposite), the POA is an integrated contract, so reliance on extrinsic evidence to interpret it is improper. And in any event, Coinme's argument relies not on interpretation of an ambiguous contractual term (there are none), but an impermissible rewriting of the contract to add a term that would, if added, cross-reference another contract, something the parties knew how to do but chose not to do here. Counts II and III must be dismissed.

Finally, Coinme's efforts at defending the pleading of its tortious interference claims (Counts IV and V) fare no better. As to Count IV, Coinme seeks to distract from its elementary failure to allege a single fact in support of the essential element of "intentional and unjustifiable inducement" with lengthy arguments about irrelevant issues, such as the scope of that element and

2

whether malice must be proven in such a claim. And as to Count V, Coinme fails to allege, even in a conclusory fashion, that Zero Hash was aware that Coinme expected to enter into a future, additional business relationship with MoneyGram, a necessary element of its claim. Additionally, though it at least attempts to allege that Zero Hash's alleged interference was "improper" or "unjustified," the actual facts alleged fall far short of plausibly establishing this element. Counts IV and V fail to state a claim.

## ARGUMENT

**I.  Count I (Breach of the ADA) Fails to Plausibly Allege a Breach.**

In the Motion, Zero Hash explained that Count I—Coinme's effort to turn a confidentiality provision into a broad non-compete—does not allege sufficient *facts* to plausibly establish the element of breach. (Dkt. 17-1 at 6-8.) As Zero Hash explained, this Count hinges on the conclusory allegation that it breached "§ 9, the Confidentiality provision of the Authorized Delegate Agreement, by misappropriating confidential information belonging to Coinme to develop CINQ." (Dkt. 1 ¶ 153.) Coinme does not dispute that this "legal conclusion couched as a factual allegation" does not suffice under *Twombly*. 550 U.S. at 555. But it accuses Zero Hash of "ignor[ing]" the Complaint's purported factual allegations that support its fundamental conclusion—*i.e.*, that Zero Hash took certain confidential information *and* used that confidential information to develop competing software. (Dkt. 25 at 3.) Coinme is wrong.

*First*, as Zero Hash explained, the allegation that it somehow used the "economics" of the "Coinme-Coinstar business relationship" *to develop competing software*—the alleged breach here—makes no sense. (Dkt. 17-1 at 7.) Contrary to Coinme's assertion, this is no mere fact dispute as to how "useful" economics would be in developing software (Dkt. 25 at 3-4); it is a total disconnect between the alleged "fact" and the legal element. Regardless of whether one could be motivated to "steal[] Coinstar away from Coinme" due to the "profitability" of the relationship

3

(*see id.*), there is simply no way that knowledge of economics could be "used" *to develop software*. This red herring does not supply the missing allegation that Zero Hash breached the ADA by using purported confidential information (knowledge of economics) "to develop CINQ."

*Second*, Zero Hash explained that the allegations that Zero Hash used unidentified "technical aspects" of Coinme's business relationship or trading platform to develop competing software were just conclusions, not facts plausibly alleging breach. (Dkt. 17-1 at 8.) Implicitly conceding that its vague allegations do not suffice, in response, Coinme badly distorts its own Complaint, characterizing it as alleging something that it does not (because Coinme cannot make such allegation in good faith). Specifically, though the contracts appended to the Complaint do not grant Zero Hash access to Coinme's API, Coinme now remarkably contends that the Complaint "allege[s] that Zero Hash *had access to* its confidential APIs and other technical information and *used* that information to develop CINQ." (Dkt. 25 at 4) (emphasis added). The Complaint contains no such allegation. The paragraph cited by Coinme does not state that Zero Hash had or was granted access to Coinme's APIs. (*See* Dkt. 1 ¶ 121 ("Zero Hash and Coinstar were able to rapidly bring CINQ to market by improperly using Coinme's non-public, confidential APIs and other proprietary information.").)[1] Indeed, as is made clear by Coinme's citations on page 3 of its Opposition, the Complaint's allegations of "confidential information" to which Zero Hash was granted access are in paragraphs 87-90, a list that does not include APIs or software. (Dkt. 25 at 3 (citing Dkt. 1 ¶ 87, 88, 90) (referencing vague "business information" and "technical aspects" of a business relationship and "Cash-to-Crypto Platform").) If Coinme believes it can allege in good faith facts supporting an alleged breach—*i.e.*, that Zero Hash had access to Coinme's API and then

---

[1] The Complaint does not allege that Coinme granted Zero Hash access to its API for the very reason identified in Zero Hash's Motion: "Although the POA granted Coinme access to Zero Hash's proprietary trading platform software, *it did not grant Zero Hash access to Coinme's trading platform*." (Dkt. 17-1 at 8.)

4

used that access to develop CINQ—it must do so in an amended complaint, not by blatantly overstating the conclusory allegations of its existing Complaint.

*Finally*, with no explanation whatsoever, Coinme contends that it has alleged breach by alleging that CINQ: (1) was developed faster than Coinme and Coinstar developed the "Cash-to-Crypto Platform," and (2) bears a strong resemblance to the Coinme/Coinstar Cash-to-Crypto Platform. (Dkt. 25 at 3.) Neither of these allegations have any relevance or legal significance; neither explain how Zero Hash "misappropriated" any particular confidential information and used it "to develop CINQ." The Complaint simply fails to allege a breach and must be dismissed. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (affirming dismissal for failure to plausibly allege breach); *see also McClellon v. Citigroup Glob. Markets, Inc.*, No. C18-0978-JCC, 2018 WL 5808440, at *5 (W.D. Wash. Nov. 6, 2018) (dismissing breach of contract claim that failed to allege how defendant breached contract); *Hennessey v. Americredit Fin. Servs. Inc.*, No. 3:24-CV-5145-DGE-RJB, 2024 WL 2845939, at *1 (W.D. Wash. June 5, 2024) ("Plaintiff . . . has not specified what Defendants did or failed to do that would amount to a breach of contract. Alleging a breach without facts justifying a claim is not sufficient."); *Prewett Enterprises, Inc. v. Grand Trunk W. R.R. Co.*, No. 18-CV-04254, 2019 WL 6310495, at *9 (N.D. Ill. Nov. 25, 2019) (dismissing breach of contract count for failing to allege facts explaining how agreement was breached).

## II.     Counts II and III (Breach of POA) Fail to State a Claim.

Coinme's Opposition fails to overcome the two independent bases that Zero Hash identified as requiring dismissal of Counts II and III—Coinme's attempt to turn an unenforceable POA amendment into a broad non-compete. First, the POA's clear limitation of liability clause necessarily dooms Coinme's alleged claim to damages. And second, there was no consideration for the Second Amendment, so its purported restraints are unenforceable.

5

### A. Coinme Cannot Allege Damages Under the Platform Operator Agreement.

Counts II and III are barred by the POA's broad limitation of liability clause that eliminates any possibility of damages. It provides that the "total maximum liability for *any* loss or damages howsoever caused and in relation to *any* claim or series of claims relating to this Agreement . . . shall be limited to the fees charged to Platform Operator during the 12 months immediately preceding the claim." (Dkt. 1-2 § 9 (emphasis added).) Coinme does not dispute that its allegations affirmatively establish that no fees were charged in the 12 months immediately preceding its claims (*see* Dkt. 17-1 at 9), which necessarily means Coinme can allege no damages under Counts II and III.

Instead, Coinme seeks to avoid dismissal by dramatically reinterpreting the plain language of the POA's limitation of liability clause. Specifically, Coinme contends that it applies only to claims brought by Zero Hash, because the provision's prefatory language includes four exceptions that only apply to Zero Hash's claims, which Coinme contends must mean that the substance of the provision applies only to Zero Hash, as well. (Dkt. 25 at 5.) But even the premise of this argument is wrong. The second exception – the only one that Coinme neglects to discuss – provides that claims for "indemnification liability" are not subject to the cap, an exception that plainly applies to both parties. (*See id.*)

And in any event, even if the parties had agreed to four circumstances in which only Zero Hash may seek greater damages (they did not), the plain text of the core limitation of liability provision is unambiguous: it applies to "any" loss in relation to "any" claim, without any further carve-outs or exceptions. If the parties wanted it to apply only to Zero Hash's claims, they could have merely added a few words to this provision (as they did with three of the four exceptions cited by Coinme). Because the parties chose not to do so in the contract, the Court should reject Coinme's attempt to manufacture ambiguity by adding nonexistent terms and reimagining the

6

terms of the contract. *See Gallagher v. Lenart*, 367 Ill. App. 3d 293, 301 (1st Dist. 2006), *aff'd*, 226 Ill. 2d 208 (2007) ("a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included").[2] Without cognizable damages, and no chance of repleading to cure this failure, Counts II and III should be dismissed with prejudice. (*See* Dkt. 17-1 at 9-10.)[3]

### B. The Second Amendment Lacks Consideration.

Even if Coinme had cognizable damages, Counts II and III should still be dismissed because the Complaint conclusively establishes that there was no consideration for the purported contract amendment. Coinme does not dispute the applicable law—*i.e.*, that "[u]nder Illinois law, 'modifications to a contract must have separate, valid consideration,'" (Dkt. 17-1 at 10 (quoting *Aguilera v. Freedman, Anselmo, Lindberg & Rappe, LLC*, No. 10-CV-5488, 2011 WL 2292302, at *7 n.5 (N.D. Ill. June 8, 2011))), and that a contract modification "solely for the benefit of one of the parties is unenforceable" (Dkt. 17-1 at 10 (quoting *Doyle v. Holy Cross Hosp.*, 289 Ill. App. 3d 75, 79 (1997))).[4] Nor does it dispute that, on its face, the Second Amendment contains no consideration because it solely purports to add two restraints on Zero Hash. (Dkt. 17-1 at 11.) Instead, Coinme seeks to avoid dismissal by relying on parol evidence that it contends provides

---

[2] Coinme cannot manufacture an ambiguity merely by offering a counter-interpretation that is belied by the terms of the agreement. *See Thompson v. Gordon*, 241 Ill. 2d 428, 443 (2011) (ambiguity exists where "words in a contract are *reasonably* susceptible to more than one meaning," but ambiguity is not created "merely because the parties disagree on its meaning") (emphasis added).

[3] Though Coinme attempts to distinguish Zero Hash's authority on their facts, it does not, because it cannot, dispute the basic proposition of law for which they stand: damages are an essential element of a breach of contract claim, which must be pled to survive dismissal.

[4] It also does not contest that courts dismiss at the pleading stage "[b]reach of contract claims seeking to enforce a purported amendment that lacked consideration" (Dkt. 17-1 at 10 (citing *Ferguson v. GoodMojo Corp.*, No. 18 C 5016, 2019 WL 3776677, at *3 (N.D. Ill. Aug. 12, 2019)).)

the missing consideration. Coinme's argument fails for three reasons.

*First*, though the Second Amendment itself does not contain an integration clause, the POA does, and the Second Amendment makes clear that it purports to merely insert two additional clauses to the POA, not to replace or supersede it. (Dkt. 1-3 ("The Parties hereby wish to amend the Agreement as follows with insertions underlined."); Dkt. 1-2 § 15.1 ("Entire Agreement. With exception of the [ADA], this [POA] constitutes the entire agreement between the Parties for the Zero Hash Services . . . .").) As such, the POA's integration clause is in effect, and it bars an attempt to use parol evidence to supply the consideration missing from the face of the Second Amendment. *See Lewitton v. ITA Software, Inc.*, No. 07 C 4210, 2008 WL 4427512, at *5 (N.D. Ill. Sept. 29, 2008) (when contract has integration clause "parol evidence cannot be admitted to add another item to the agreement"), *aff'd*, 585 F.3d 377 (7th Cir. 2009).

*Second*, even if not barred by the POA's integration clause, extrinsic evidence such as that proffered by Coinme can be used to interpret a contract "*only* if [the Court] first determine[s] that there is ambiguity in the contract language." *Contractors Lien Servs., Inc. v. Kedzie Project, LLC*, 2015 IL App (1st) 130617-U, ¶ 41 (emphasis in original). There is no ambiguity here that requires interpreting. Coinme is simply attempting to have the Court *add* a term to the Second Amendment to cross reference a separate contract that Coinme asserts is "otherwise not relevant." (Dkt. 25 at 7.)[5] That is impermissibly rewriting a contract, not interpreting an ambiguous contract. *See Zurich Am. Ins. Co. v. Infrastructure Eng'g, Inc.*, 2023 IL App (1st) 230147, ¶ 37 ("Where the terms of a contract are clear and unambiguous, they must be enforced as written, and courts cannot rewrite a contract."), *aff'd*, 2024 IL 130242, ¶ 37. Indeed, this is consistent with Coinme's own cited

---

[5] The Parties' own contracting history demonstrates they knew how to cross reference other agreements between themselves if they wanted them to be interpreted together. (*See, e.g.*, Dkt. 1-2 §§ 4, 15.1 (POA cross referencing the ADA).)

authorities, where the courts used extrinsic evidence to interpret facially ambiguous language, not to add terms to an unambiguous contract as Coinme asks the Court to do here. (Dkt. 25 at 7 (citing *J&B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 162 Ill. 2d 265, 274-76 (1994) and *37 E. 50th St. Corp. v. Rest. Grp. Mgmt. Servs., LLC*, 156 A.D.3d 569, 569-70 (1st Dept. 2017)).)

*Third*, even if Coinme's parol evidence could be considered, on its face, the Slack communication does not provide the missing consideration. Though it shows that the Second Amendment and Services Agreement were being negotiated at the same time, Coinme cites no authority for its assertion that merely negotiating two contracts at the same time necessarily means the contracts are one integrated transaction, particularly given Coinme's assertion that the contracts are unrelated. *See* Dkt. 25 at 7 (Services Agreement is "otherwise not relevant to this dispute"); *see also Gramar LLC v. M&M Outdoor, Inc.,* 2019 IL App (1st) 181338-U, ¶ 29 (two contracts deemed to be separate agreements, despite being executed at the same time by the same parties pertaining to the same subject matter, because "there was no over-arching deal or business venture that tied the two agreements together; rather, each stood independently on its own and one did not serve as an inducement for the other").[6] In fact, on its face, the Slack communication demonstrates that the two agreements were *not* consideration for each other. At 10:21 am, Edward Woodward stated that he "will not let the signing of [the Services Agreement] . . . be tied [to the Second Amendment]." (Dkt. 25-1 at 7.) In response, rather than asserting that the agreements are in fact tied together or propose revisions to integrate the contracts (as the parties did with certain of their other contracts), Mr. Choi merely agreed to execute both contracts. (*See id.*) This parol evidence provides no support for Coinme's assertion that these separate contracts were consideration for

---

[6] Should Coinme seek to amend its complaint to allege the Services Agreement and Second Amendment were part of an integrated transaction, it must attach the Services Agreement to its amended pleading and deal with the consequences, rather than selectively rely on the Services Agreement only when convenient.

9

each other.

As such, Counts II and III, premised entirely on a breach of terms of an unenforceable amendment, must be dismissed.

### III. Count IV (Tortious Interference) Does Not Adequately Allege That Zero Hash's Alleged Interference Was Unjustified or Improper.

In the Motion, Zero Hash established that Count IV (tortious interference with contract) must be dismissed because it does not allege a single fact in support of the third element—*i.e.*, that Zero Hash intentionally and unjustifiably induced a breach of the contract. (Dkt. 17-1 at 11 (citing *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012), *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2021 WL 2660772, at **5-6 (N.D. Ill. June 29, 2021) (dismissing tortious interference count for failing to plausibly allege that interference was unjustified)).) In response, Coinme seeks to distract with strawmen arguments regarding the proper scope of this essential element, whether malice must be alleged, whether a privilege applies and if so, who bears the burden of pleading or proving the privilege. The Court need not delve into these issues to dismiss Count IV.

Zero Hash's argument is much simpler: Coinme's pleading of element three impermissibly rests on the purely conclusory allegations that Zero Hash "intentionally and unjustifiably interfered with [Coinme and MoneyGram's] contracts" and that "MoneyGram's breach would not have occurred but for Zero Hash entering into a business relationship with MoneyGram." (Dkt. 17-1 at 11-12 (quoting Dkt. 1 ¶¶ 185-87).) Under Coinme's own authority, dismissal is appropriate. *See Am. States Ins. Co. v. Bailey*, 285 Ill. App. 3d 687, 692 (1st Dist. 1996) ("agree[ing]" with defendant's contention "that it is unnecessary to reach the issue of justification because [plaintiff's] complaint contains merely conclusory allegations and legal conclusions, and [therefore] cannot support a cause of action for intentional interference with a contractual relationship") (cited at Dkt.

10

25 at 9).

Coinme does not – because it cannot – point to a single fact alleged in Count IV that supports these conclusions. Nor does it attempt to distinguish *Fresh N' Pure Distributors, Inc. v. Foremost Farms USA*, cited by Zero Hash, in which the court dismissed a tortious interference with contract claim, where, as here, the complaint pled the element of intentional and unjustified inducement of a breach with only legal conclusions. No. 11-C-470, 2011 WL 5921450, at *10 (E.D. Wis. Nov. 28, 2011) (applying Illinois law). That pleading defect is fatal to Count IV. *See Twombly*, 550 U.S. at 555 ("formulaic recitation of the elements will not do"); *see also Fresh N' Pure Distributors*, 2011 WL 5921450, at *10; *Life Spine*, 2021 WL 2660772, at **5-6 (dismissing tortious interference count for failing to plausibly allege that interference was unjustified).[7]

### IV. Count V (Tortious Interference) Does Not Adequately Allege That Zero Hash Tortiously Interfered With Coinme's Potential Business Relationship.

In the Motion, Zero Hash also identified two independent bases on which Count V must be dismissed. (Dkt. 17-1 at 12-15.) It explained that, *first*, Coinme "does not allege – even in a conclusory fashion – that Zero Hash was aware that Coinme expected to enter into a future, additional business relationship with MoneyGram (as opposed to its contractual agreement, which was the subject of Count IV)." (*Id.* at 12.) Without such an allegation, Coinme cannot establish that Zero Hash had knowledge of Coinme's expectancy, an essential element of its tortious interference with prospective economic advantage claim. (*Id.* (citing *Tamlyn v. BlueStone Advisors, LLC*, No. 17 C 8893, 2018 WL 1920184, at *4 (N.D. Ill. Apr. 24, 2018) (tortious

---

[7] In any event, by acknowledging that the parties are competitors, Coinme has alleged facts giving rise to the competitor's privilege. Though Coinme cites some contrary authority, the proper interpretation of Illinois law is that this privilege applies to intentional interference with contract claims. *See Andersen v. Leszynski*, 2021 IL App (1st) 200879-U, ¶ 32 (complaint raised "privilege to compete in an open real estate market [and] [t]he trial court correctly held that [plaintiff] had the burden to plead sufficient facts to overcome the privileges"). As such, Coinme must allege facts sufficient to overcome the privilege, and it has not alleged a single fact that would support such an argument.

interference claim dismissed where complaint contained only "threadbare allegation" that defendant was aware of prospective business)).) Coinme entirely ignores this argument and authority, instead summarily asserting that it has pled each essential element and pointing to the Complaint's allegations that Zero Hash was aware of Coinme's present (not expectation of future) business with MoneyGram. (*See* Dkt. 25 (citing Dkt. 1 ¶¶ 137-38, 194).) Count V should be dismissed on this basis alone.

Second, though Coinme at least attempts to address Zero Hash's contentions as to the third element of its claim—*i.e.*, intentional and unjustified interference, or "purposeful interference" "committed [with] some impropriety"—its arguments in this regard fail. (*See* Dkt. 17-1 at 13-15.) For example, Zero Hash explained that Coinme cannot leverage the unenforceable Second Amendment to supply the alleged "unjustified" or "improper" conduct. (Dkt. 17-1 at 14.) In support, Zero Hash cited *Pampered Chef v. Alexanian*, where the court explained that its finding that the at-issue non-solicitation clause was invalid meant that the defendants "were free to solicit anyone they pleased. . . ." 804 F. Supp. 2d 765, 808 (N.D. Ill. 2011). As such, the court held that an alleged breach of the invalid non-solicitation clause could not establish the requisite "unjustified tampering . . . and thus [plaintiff had] no viable claim for tortious interference with economic advantage." *Id.* Though Coinme summarily seeks to distinguish this case on the facts—asserting that "Zero Hash's promise to Coinme here differs from the non-solicitation agreement in *Pampered Chef*" (Dkt. 25 at 12)—the case's underlying principles are spot on. If the Second Amendment is unenforceable (as it is), Zero Hash was "free to solicit anyone [it] pleased." *Id.* at 808. Consequently, Coinme cannot establish the requisite "unjustified [conduct] . . . and thus [Coinme] has no viable claim for tortious interference." *Pampered Chef*, 804 F. Supp. 2d at 808; *see also House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11 C 07834, 2014 WL 6845862, at *9

(N.D. Ill. Dec. 4, 2014) (where antitrust claims were "insufficient as a matter of law, . . . those claims provide no basis for an inference of wrongful conduct in connection with the tortious interference claims").

Next, Coinme fails to overcome Zero Hash's assertion that Coinme cannot establish impropriety with its conclusory allegation, made on information and belief, that Zero Hash "misrepresented Coinme's financial health to MoneyGram." (Dkt. 17-1 (quoting Dkt. 1 ¶ 198).) Indeed, Coinme entirely ignores Zero Hash's contention that such a conclusory assertion does not suffice under Rule 8(a), much less Rule 9(b)'s pleading standards, which apply to this fraud-based allegation. (Dkt. 17-1 at 15.) Without alleging who at Zero Hash made this purported representation, to whom at MoneyGram it was made, and where and when this representation was made, Coinme's summary allegation must be disregarded. *See 3C Consulting, LLC v. Rehberger*, No. 21-CV-04838, 2025 WL 358970, at *1 (N.D. Ill. Jan. 31, 2025) (heightened pleading standard "means the plaintiff typically must include the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated," and "generalized or conclusory allegations are insufficient") (internal quotations omitted).[8]

Finally, as Zero Hash anticipated in the Motion, Coinme attempts to manufacture the element of purposeful interference and impropriety by pointing to its allegation that "Zero Hash's interference . . . caused confusion to customers." (Dkt. 17-1 at 14 (quoting Dkt. 1 ¶ 201).) Because it has no response, Coinme does not dispute that "at most, this allegation goes to a different

---

[8] Rather than addressing Rules 8(a) and 9(b), Coinme seeks to defend its use of "on information and belief pleading," by disingenuously asserting that it has pled, as it concedes it must: (a) the "grounds for its suspicion" and (b) that the facts constituting fraud are not accessible to Coinme. (Dkt. 25 at 13.) Neither of these has been pled. In fact, Coinme cites only to paragraph 198 of the Complaint, which is the conclusory "on information and belief" allegation itself.

13

element—potential damages." (Dkt. 17-1 at 14-15 (citing *Am. Inst. for Preventive Med., Inc. v. Oakstone Pub., LLC*, No. 09-11195, 2010 WL 845977, at *13 (E.D. Mich. Mar. 5, 2010) (statements that merely caused confusion, "without any showing that the statement[s] [were] made with intent to defraud," "are simply not enough to support a claim of tortious interference")).) This allegation is irrelevant to the salient inquiry—*i.e.*, whether Zero Hash's conduct was improper or unjustified.

At bottom, Coinme seeks to establish intentional and unjustified interference by merely alleging that Zero Hash failed to tell MoneyGram about an unenforceable contract, and certain of MoneyGram's customers were confused. (Dkt. 25 at 12.) That is a far cry from meeting the standard articulated in Coinme's own authority, which requires establishing "improper competitive strategies that employ fraud, deceit, intimidation, or deliberate disparagement." *Cohabaco Cigar Co. v. U.S. Tobacco Co.*, No. 98 C 1580, 1998 WL 773696, at *7 (N.D. Ill. Oct. 30, 1998). Coinme's Complaint, at most, alleges that Zero Hash "competed normally. . . . [But] tort law does not penalize a business for acting to further its own interests." *Talman Consultants, LLC v. Urevig*, No. 22 C 6540, 2023 WL 1451532, at *6 (N.D. Ill. Feb. 1, 2023) (granting motion to dismiss tortious interference claim where plaintiff had alleged no facts from which impropriety could be inferred). Count V must be dismissed.

## CONCLUSION

For the foregoing reasons, Zero Hash requests that this Court grant its Motion to Dismiss.

Dated: February 20, 2025            Respectfully submitted,

By: /s/ *David G. Jorgensen*
        Attorney for Zero Hash LLC

David Jorgensen
Sean Sullivan
Croke Fairchild Duarte & Beres, LLC
191 N. Wacker Dr., Ste 3100
Chicago, IL 60606
312-641-0881
Email: djorgensen@crokefairchild.com
Email: ssullivan@crokefairchild.com

Michael Frisch
Croke Fairchild Duarte & Beres, LLC
180 N. LaSalle St., Suite 3400
Chicago, IL 60601
847-530-7419
Email: mfrisch@crokefairchild.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 20, 2025, a copy of the above document was electronically filed through the ECF system and will be sent electronically to all persons identified on the Notice of Electronic Filing.

                                                        */s/ David G. Jorgensen*
                                                        David G. Jorgensen
                                                        Counsel for Zero Hash LLC